**UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

PRICE, HENEVELD, COOPER, DEWITT, &
LITTON,

        Plaintiff/Counter-Defendant,

                                      Case No. 04-CV-00561-DT

v.

ANNUITY INVESTORS LIFE INSURANCE
COMPANY,

        Defendant/Counter-Plaintiff.
                                            /

**ORDER DENYING PLAINTIFF'S "MOTION FOR SUMMARY JUDGMENT
REGARDING MALPRACTICE COUNTER-COMPLAINT"**

Pending before the court is Plaintiff Price, Heneveld, Cooper, DeWitt & Litton's ("Price Heneveld's") "Motion for Summary Judgment Regarding Malpractice Counter-Complaint." Having reviewed the motion, the court concludes that a hearing is unnecessary. W.D. Mich. LR 7.2(d). For the reasons stated below, the court will deny Plaintiff's motion.

**I. BACKGROUND**

In November 1996, Mr. Jim Mitchell, a Price Heneveld attorney, was asked by Defendant Annuity Investors Life Insurance Company ("AILIC") to conduct a trademark search and prepare an opinion letter for a Class 36 Variable Annuity Product that AILIC wished to call either the "Navigator" or the "Commodore Navigator." (Mitchell Aff. at ¶ 3; Def.'s Counterclaim at ¶ 6.) At this time, AILIC had a series of "Commodore" formative marks registered and in use. (Mitchell Aff. at ¶ 3.) On December 3, 1996 Mitchell issued a letter to AILIC in which he stated that "[i]t is our recommendation that

'Navigator' per se not be adopted." (Pl.'s Mot. at Ex. 2.) The letter stated that "Seaboard Life Insurance Company has a registration for 'Navigator' for use on group health insurance" and "Clark Capital ["Clark Capital"] Management has a registration for 'Navigator' on investment advisory services in the field of stock and mutual funds." (*Id.*) In the same letter, Mitchell asserted that "[b]ased on these prior uses and/or registrations it is our recommendation that American Annuity Group use 'Commodore Navigator,' rather than 'Navigator' per se." (*Id.*)

In September 1997, the United States Patent and Trademark Office ("Patent and Trademark Office") refused to register the "Commodore Navigator" mark because it determined that there was likelihood of confusion with another mark. (*Id.* at Ex. 3.) In February 1998, the Patent and Trademark Office published the "Commodore Navigator" mark for opposition. (*Id.* at Ex. 4.) After obtaining an extension of time to oppose the mark, Clark Capital issued a letter asking that AILIC "abandon its intention to use [t]he Commodore Navigator to identify the services listed in its application" and "abandon that application as well." (*Id.* at Ex. 5.) Mitchell informed Clark Capital, through a letter, that AILIC would not use the "Navigator" in any mark except the "Commodore Navigator" mark. (*Id.* at Ex. 6.) In July 1988, Clark Capital filed a "Notice of Opposition" against "The Commodore Navigator" trademark application. (*Id.* at Ex. 7.) In October 1998, Clark Capital provided materials showing that AILIC was highlighting the term "Navigator" through the use of a larger and different font than it used for the "Commodore." (*Id.* at Ex. 9.) According to Mitchell, Clark Capital then offered to resolve the dispute with no further costs to the parties if AILIC phased out its use of the

mark, but AILIC refused.[1]  (Mitchell Aff. at ¶ 12.)  At this point, AILCI had invested less than $5,000 in attorneys fees associated with the case.  (*Id.* at ¶¶ 12-13.)

In April 2000 Clark Capital filed trademark infringement litigation against AILIC in the United States District Court for the Eastern District of Pennsylvania.  (Def.'s Counter-Complaint at ¶ 8.)  Price Heneveld represented AILIC in the litigation.  In February 2002, shortly before the start of trial, AILIC settled the case on confidential terms without input from Price Heneveld.  (*Id.* at ¶ 10.)

On July 7, 2004, Plaintiff filed a "Complaint for Account Stated" in Kent County Circuit Court.  Defendant Annuity Investors Life Insurance Company ("AILIC") removed the case to this court on August 18, 2004.  In its complaint, Plaintiff asserted that it "provided legal services on behalf of Defendant in Kent County, Michigan, and billed Defendant for same."  (Compl. at ¶ 4.)  Plaintiff complains that "Defendant's last payment [to Plaintiff] was made in January of 2002, in the amount of $80,034.42, leaving a balance due and owing of $141,048.95."  (*Id.* at ¶ 6.)  On September 21, 2004, Defendant filed a malpractice counterclaim, alleging that Plaintiff was negligent in its legal representation of Defendant and "violated the standard of care of an attorney specializing in trademark law."  (Def.'s Counterclaim at ¶ 15.)  On November 30, 2005, Plaintiff moved for summary judgment on Defendant's Counterclaim.

---

[1]AILIC argues that "to support its claim in this regard Price Heneveld has not produced any documentation other than Mr. Mitchell's . . . letter stating that Clark Capital's attorney had 'indicate[d] a willingness to settle on the basis' of a simple phase out."  (Def.'s Resp. at 19.)

3

## II.  STANDARD

Under Federal Rule of Civil Procedure 56, summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  "Where the moving party has carried its burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record construed favorably to the non-moving party, do not raise a genuine issue of material fact for trial, entry of summary judgment is appropriate."  *Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir. 1987) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)).

Summary judgment is not appropriate when "the evidence presents a sufficient disagreement to require submission to a jury."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).  The existence of some factual dispute, however, does not defeat a properly supported motion for summary judgment; the disputed factual issue must be material.  *See id.* at 252 ("The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict-'whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the *onus* of proof is imposed.'").  A fact is "material" for purposes of summary judgment when proof of that fact would have the effect of establishing or refuting an essential element of the claim or a defense advanced by either party.  *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984).

In considering a motion for summary judgment, the court must view the facts and draw all reasonable inferences from the admissible evidence presented in a manner most favorable to the nonmoving party. *Dunigan v. Noble*, 390 F.3d 486, 492 (6th Cir. 2004) ("[W]e must determine 'not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it upon whom the *onus* of proof is imposed.'") The court does not weigh the evidence to determine the truth of the matter, but must determine if the evidence produced creates a genuine issue for trial. *Sagan v. United States*, 342 F.3d 493, 497 (6th Cir. 2003).

## III.  DISCUSSION

In Count I of its Counterclaim, AILIC alleges that Plaintiff was negligent in its legal representation of the company by its "failure to include the information regarding Clark's propensity to challenge and litigate the use of the term 'Navigator' as to Class 36 financial services products in Mitchell's opinion letter" and alleges that it has incurred the following expenses and damages:

> a) Expenses associated with the administration of the settlement agreement;
> b) The confidential settlement amount; and
> c) $2,312,697.90 as the total amount of attorney fees, costs and related expenses incurred in defending against the challenges and litigation filed by Clark.

(Def.'s Counterclaim at ¶¶ 15-16.)

In an action for legal malpractice, the plaintiff has the burden of proving: (1) the existence of an attorney-client relationship; (2) negligence in the legal representation of the plaintiff; (3) that the negligence was a proximate cause of an injury; and (4) the fact

5

and extent of the injury alleged. *Coleman v. Gurwin*, 503 N.W.2d 435, 436-437 (Mich. 1993) (internal citations omitted).

Because elements one, two, and four are not in dispute, the court will only analyze the third element of a legal malpractice allegation: causation.[2] "[P]roving proximate cause actually entails proof of two separate elements: (1) cause in fact, and (2) legal cause." *Skinner v. Square D Co.*, 516 N.W.2d 475, 479 (Mich. 1994) (citing *Moning v. Alfono*, 254 N.W.2d 759, 764-65 (Mich. 1977)).

> [The cause in fact element generally requires showing that "but for" the defendant's actions, the plaintiff's injury would not have occurred. Prosser & Keeton, Torts (5th ed.), § 41, p. 266. On the other hand, legal cause or "proximate cause" normally involves examining the foreseeability of consequences, and whether a defendant should be held legally responsible for such consequences. *Moning* at 439, 254 N.W.2d 759. *See also Charles Reinhart Co. v. Winiemko*, 444 Mich. 579, 586, n. 13, 513 N.W.2d 773 (1994). A plaintiff must adequately establish cause in fact in order for legal cause or "proximate cause" to become a relevant issue.

*Id.*

### A.  Cause In Fact

In establishing cause in fact, a plaintiff "must introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a *cause in fact* of the result.  A mere possibility of such causation is not enough." *Skinner*, 516 N.W.2d at 481 (emphasis added).  Therefore, AILIC must establish that but for Plaintiff's conduct it would not have incurred fees and costs in excess of $2.3 million in its litigation with Clark Capital.

Plaintiff argues that "it is undisputed that [AILIC] knew of an actual challenge by

---

[2]AILIC asserts states that "elements 1, 2, and 4 are not in dispute," (Def.'s Resp. at 7), and Plaintiff's motion only concerns element 3.

Clark Capital in March of 1998, when Clark Capital sent its cease and desist letter" and "could have (as it ultimately did) abandoned the application and simply phased in a name change to 'The Commodore Spirit' or some other name," instead of fighting Clark Capital.  (Pl.'s Mot. at 10.)  Plaintiff further argues that "in June or July of 1998, when Clark Capital filed a formal Notice of Opposition with the Patent and Trademark Office, [AILIC] knew that it faced *formal opposition* from Clark Capital, not just the propensity that Clark might challenge the mark."  (*Id.* at 11 (emphasis supplied).)  It is Plaintiff's contention that "[AILIC] could have resolved the entire dispute with Clark Capital in October of 1998 - at a time when it had incurred less than $5,000 in fees between the trademark work and the opposition - by agreeing to simply phase out its use of the mark, as it ultimately would do.  But [AILIC] refused."  (*Id.*)

To the contrary, Defendant argues that "Price Heneveld led [AILIC] to believe that it had the practice of offering [AILIC] very conservative advice regarding possible trademark registrations" and "at all times, Price Heneveld actively encouraged [AILIC] to defend against Clark Capital's opposition."  (Def.'s Resp. at 15, 19.)  In support of its contention, Defendant offers Mitchell's deposition testimony in which he stated:

> Q:  In some of the pleadings that I've seen in this case I've seen reference to your approach to trademark clearance as being conservative.  Would you describe that has [sic] an accurate -
> A:  Any trademark attorney's approach to trademark clearance opinion letters is conservative.  That is standard operating procedure among trademark attorneys that any trademark attorney would say their approach is conservative.
>
> Q: Can you explain to me what exactly, at least in your mind, a conservative approach means in terms of trademark clearance?
> A: It's the same as any other trademark attorney.  You have a search report in front of you and you look at it and if there is any doubt, if its questionable, you discuss that with the client.  If they want to do further

7

investigation, fine, you do it.  If they don't want to do further investigation, okay, let's just not adopt it, even though, you know, it's a close question and maybe they'd be entitled to use it, you know, if push came to shove. But if they'd rather not investigate further, you just decide against adoption and you go on and try to pick something else.

Q: Do you generally communicate to your clients that your approach is conservative?
A: Well, by course of conduct, I mean, you know, I think a client understands that when you pick up the phone and call them and say, you know, here's one that could go against you, do you want us to investigate further, look into it further, spend some more of your money pursuing it, or would you rather just let it go.  That communicates to them through your approach that it[']s conservative in nature.

Q: Would it be a fair description to say that, if there is a question or an issue about whether a mark should be adopted that you would err in favor of not adopting the mark?
A: I would err in – yes, I would err in making that recommendation unless the client said, Well, you know, why don't you look into it a little further first, and then we'd look into it further.  We may still come to the same conclusion but we may come to an alternative conclusion as a result of further investigation.

***

Q: Would it be fair to assume on your part that they're going to rely on those opinions?
A: I always hope that a client will consider the opinion in making any decision they make.

(Mitchell Dep. at 10-12, 37.)

Defendant also points to letters that Mr. Mitchell and his associate at the time, Barry Kane, wrote to AILIC.  Defendant claims that these letters created "a specific expectation that [Mr. Mitchell] and his colleagues would point out companies that had exhibited aggressive behavior - such as filing 'oppositions' against third party

8

users/applicants of similar marks." (*Id.* at 10.)[3]  In addition, AILIC has presented its expert, Kenneth Germain, who stated that the opinion letter Mitchell issued "*should have* highlighted the fact that Clark Capital's Navigator (alone) registration had been the basis for two filed Oppositions, one against MarketNavigator and the other against 401(K) Navigator 'The Participant's Personal Investment Guide' & Design."  (Germain Report, ¶10(a), Def.'s Resp. at Ex. 5) (emphasis supplied).

      Defendant has presented numerous pieces of evidence that it suggests demonstrate that it relied on Price Heneveld's advice in determining how to conduct itself with Clark Capital and in making its decision to use the "Commodore Navigator" mark, however it is a question for the factfinder whether Defendant was following Mitchell's advice and how much of Defendant's decisions were independently made.  For example, the court cannot assume the role of factfinder and determine that since Defendant chose to fight with Clark Capital in the face of actual opposition (when Clark Capital filed its lawsuit), AILIC would have ignored any advice that Mitchell would have given about potential opposition earlier in the case.  The court, therefore cannot conclude that a reasonable jury could find only that Defendant has failed to demonstrate cause in fact in this matter.

---

      [3]These letters include, for example, a February 7, 1995 letter in which Mitchell stated in part: "In view of their successful opposition to single 'Global America' it is our recommendation that this mark be avoided" and a March 24, 1995 letter in which Kane stated: "We believe the chance of any objection being raised is slight given the absence of any kind of litigation or objection history appearing in the search report materials." (Def.'s Resp. at Exs. 7-8.)

9

### B. Legal Cause

With regard to legal cause, Plaintiff argues that "against the above undisputed factual backdrop, Price Heneveld should not be held liable for Annuity's $2.3 million in costs and fees, or its settlement amount." (Pl.'s Mot. at 11.)

"Generally, proximate cause is a factual issue to be decided by the trier of fact. However, if reasonable minds could not differ regarding the proximate cause of the plaintiff's injury, the court should decide the issue as a matter of law." *Nichols v. Dobler,* 655 N.W.2d 787, 788 (Mich. Ct. App. 2002) (citing *Dep't of Transp. v. Christensen*, 229 Mich. App. 417, 424, 581 N.W.2d 807 (1998)). "Proximate cause normally involves examining the foreseeability of consequences, and whether a defendant should be held legally responsible for such consequences." *Id.* (internal citations omitted.)

Indeed, reasonable jurists could disagree as to whether AILIC's decisions relating to Clark Capital were foreseeable based on the advice given to it by Plaintiff. For example, there is at least an issue of fact as to whether Mitchell at any time advised AILIC that it should not use disproportionate font sizes in displaying these words. Mitchell stated in his deposition that he advised AILIC to even out the font sizes between "Commodore" and "Navigator," testifying:

> Q: You mentioned that Annuity Investors did not follow your advice and you specifically mentioned reduced font size in Commodore versus Navigator.
> A: And in some places just had Navigator alone without Commodore at all.
>
> Q: When did you first find out that they had done that?
> A; Clark Capital's attorney, Mr. Weinstein, was kind enough to send me some examples of that -
>
> ***
>
> - in response to my letter to him setting forth the essence of our position.

> Q: At that point did you advise Annuity Investors that they should even out the font size?
> A: Yes.
>
> Q: Did you ever advise them of that in writing?
> A: Well, I know that the subject is discussed in at least one opinion. I probably didn't put anything else in writing. You always have the interesting issue of the prejudicial impact that that might have. It's like the client accused of negligence who during the course of the negligence litigation makes a change that's responsive to the negligence issue.
>
> Q: You don't remember which letter, the date, or to whom the letter was written that contained that advice that you've referred to?
> A: I do know that the letter that refers to the problem or at least one of the letters that refers to the problem.
>
> Q: Could you describe the letter, like the date?
> A: It was a letter associated with the filing of the litigation when the litigation was filed and the client asked for a discussion of the litigation and of any factors that, you know, had changed from the time the opposition was filed. I know that was discussed.

(Mitchell Dep. at 27-28.) Defendant argues that when Mitchell was presented with a letter dated May 5, 2000 from Mitchell to Bill Gaynor, of the AILIC law department, he confirmed that it was the letter he had referred to, but the letter itself "reveals no such warning" from Mitchell. (Def.'s Resp. at 23 (citing Ex. 17, Mitchell Dep. at 49).) For this reason and the various other conflicting contentions relating to what advice Mitchell gave AILIC and how that advice or the lack thereof was perceived by the company, a reasonable jury could disagree as to the validity of Defendant's Counter-Complaint relating to its malpractice claim as to the elements of cause in fact and proximate cause.

## IV.  CONCLUSION

IT IS ORDERED that Plaintiff's "Motion for Summary Judgment Regarding Malpratice Counter-Complaint" [Dkt. # 88] is DENIED.

11

          S/Robert H. Cleland
          ROBERT H. CLELAND
          UNITED STATES DISTRICT JUDGE

Dated: January 31, 2006

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, January 31, 2006, by electronic and/or ordinary mail.

          S/Lisa Wagner
          Case Manager and Deputy Clerk
          (313) 234-5522

S:\Cleland\JUDGE'S DESK\Odd Orders\04-00561.PRICEHENEVELD.DenyingSJMalpracticeCounterclaim.wpd