**UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

PRICE, HENEVELD, COOPER, DEWITT
& LITTON,

    Plaintiff/Counter-Defendant,

v.                                                                           Case No. 1:04-CV-00561

ANNUITY INVESTORS LIFE
INSURANCE COMPANY,

    Defendant/Counter-Plaintiff
_____/

**OPINION AND ORDER DENYING DEFENDANT/COUNTER-PLAINTIFF'S "MOTION
. . . IN SUPPORT OF BILL OF COSTS AND MOTION FOR ATTORNEYS' FEES,
EXPENSES, AND NON-TAXED COSTS AS SANCTION"**

Pending before the court is Defendant/Counter-Plaintiff Annuity Investors Life Insurance Company's ("AILIC's" or "Defendant's") "Motion . . . in Support of Bill of Costs and Motion for Attorneys' Fees, Expenses, and Non-Taxed Costs as Sanction." The court has determined that no hearing is required. W.D. Mich. LR 7.2(d). For the reasons stated below, the court will deny Defendant's motion.

**I. BACKGROUND**

On July 7, 2004, Plaintiff/Counter-Defendant Price Heneveld, Cooper, Dewitt & Litton ("Price Heneveld" or "Plaintiff") filed a "Complaint for Account Stated" in Kent County Circuit Court. Defendant removed the case to this court on August 18, 2004. In its September 21, 2004 answer to Plaintiff's complaint, Defendant asserted a counterclaim for legal malpractice, which indicated that Defendant did not pay the invoices issued by Price Heneveld because of the firm's alleged malpractice arising out

of the trademark litigation involving AILIC.  (AILIC's Answer at ¶¶ 12-16.)  On June 16, 2005, the court[1] entered an order granting Price Heneveld's motion for partial summary judgment and deeming AILIC's malpractice claim against Price Heneveld "time-barred except to the extent of any recovery of unpaid attorney fees to which Price Heneveld ultimately proves itself to be entitled."  (6/16/06 Order at 7.)  On January 31, 2006, the court entered an order denying Plaintiff's "Motion for Summary Judgment Regarding Malpractice Counter-Complaint."  Finally, on March 17, 2006, the court entered an order granting AILIC'S "Motion for Summary judgment Regarding Claim on Account Stated."  (*See* 3/17/06 Order at 1.)

On April 17, 2006, AILIC filed the motion presently before the court, requesting taxable costs pursuant to Fed. R. Civ. P. 54(d)(1) and attorneys' fees, non-taxable costs, and expenses from Plaintiff as a sanction under Fed. R. Civ. P. 56(g).  In its motion, Defendant contends that the court should award it taxable costs in the amount of $4,776.25 and attorneys' fees in the amount of $116,716.93.  (Def.'s Mot. at 10.)

Plaintiff opposes Defendant's motion and argues that taxable costs and attorneys' fees should not be awarded because "neither party prevailed in this case."  (Pl.'s Resp. at 14.)

## II.  DISCUSSION

### A.  Taxable Costs

Defendant argues that "[i]n support of its Complaint, Price Heneveld filed an affidavit of account in which it attested that [AILIC] 'has not objected to any of the

---

[1]This order was entered by Judge David McKeague.

invoices comprising this balance,'" despite Price Heneveld's knowledge that AILIC had objected. (Def.'s Mot. at 2.) Defendant further claims that "[v]ery late in discovery, [AILIC] obtained a key admission from Randall Litton (a senior partner at Price Heneveld) during his deposition, in which he acknowledged that [AILIC] actually had objected to the purported account stated of Price Heneveld." (*Id.*) Defendant further contends that "in his affidavit, Mr. Mitchell [a Price Heneveld attorney] admitted that [AILIC] objected to the billings of Price Heneveld by informing him that [AILIC] believed that Price Heneveld had actually been overpaid for its fees and costs incurred up to that point . . . and that Price Heneveld should actually return at least a portion of what it had received from [AILIC]." (*Id.* at 2-3.) Defendant complains that "these objections were made well before Price Heneveld filed the instant lawsuit." (*Id.* at 3.) In response, Price Heneveld asserts that AILIC "should not be awarded any costs because neither party prevailed." (Pl.'s Resp. at 4.)

      Generally, the prevailing party in an action is entitled to costs other than attorneys' fees. Fed. R. Civ. P. 54(d)(1). Although not binding authority, the Third Circuit has held that the prevailing party can be determined by analyzing "whether plaintiff achieved 'some of the benefit sought' by the party bringing the suit." *Institutionalized Juveniles v. Sec'y of Public Welfare*, 758 F.2d 897, 910 (3d Cir. 1985) (citations omitted). If the court determines that neither party has prevailed completely, then "in such a situation costs and legal fees rest largely in the discretion of the district judge." *W.R. Grace & Co. v. Hargadine*, 392 F.2d 9, 20 (6th Cir. 1968). This discretion "permits a district court to conduct a case-specific inquiry and to look at all of 'the circumstances and equities of [the] case.'" *Tao of Sys. Integration, Inc. v. Analytical*

*Serv. & Materials, Inc.*, 412 F. Supp. 2d 571, 579 (E.D. Va 2006) (citation omitted).

Both parties have cited cases where the claims and counterclaims were both defeated, where verdicts cancelled each other out, or where one or both parties received very minimal recovery. *See, e.g, Giavoni v. Dobbs House, Inc.*, 164 F.3d 1071 (7th Cir. 1999); *Ruiz v. A.B. Chance Co.*, 234 F.3d 670 (Fed. Cir. 2000); *Lacovara v. Merrill Lynch, Pierce, Fenner, & Smith*, 102 F.R.D. 959, 961 (E.D. Pa. 1984); and *Scientific Holding Co., Ltd. v. Plessey, Inc.*, 510 F.2d 15 (2d Cir. 1974). Although none of these cases are binding on this court, these courts' holdings are instructive on the meaning of a "prevailing party" under Fed. R. Civ. P. 54(d)(1).

Both parties cite *City of Rome, Italy v. Glanton,* 184 F.R.D. 547 (E.D. Pa. 1999), where the plaintiff lost on its claim and the defendant lost on its counterclaim. In *City of Rome*, the Eastern District of Pennsylvania held that when determining whether a defendant that lost on its counterclaim is entitled to costs, the court should look to whether the counterclaim is related to the main complaint or if it requires "proof outside the scope of the plaintiff's claim." *Id.* at 550 (citation omitted). The court also held that the relative sizes of the claims should be taken into account. *Id.*

Although not binding authority, the court finds persuasive the *Tao* court's statement that the *City of Rome* court's holding is too limiting and actually "contradicts the overwhelming number of cases, particularly appellate cases, that confer broad discretion on a district court to determine which litigant is the prevailing party." *Id.* at 579. In *Tao*, the court explained that a defendant should not be awarded costs automatically simply because the counterclaim involves the same legal and factual issues as the claim and because the damages sought are less than those sought by the

plaintiff. *Id.* at 578-79. As the court in *Tao* suggests, discretion "permits a district court to conduct a case-specific inquiry and to look at all of 'the circumstances and equities of [the] case." *Id.* at 579 (citation omitted).

### 1. Relative Monetary Value of Claim and Counterclaim

First, although not dispositive, the comparative sizes of the claim and the counterclaim are relevant to the determination of whether the court should award costs. *See Scientific Holding*, 510 F.2d. at 27-28 (holding that consideration of the plaintiff's claim of $1,260,000 in compensatory damages plus punitive damages compared to the defendant's relatively small counterclaim of $106,752[2] for understated liabilities and overvalued inventory, plus the relative time spent on the issues during trial was relevant to the decision whether to award costs to the defendant and recognizing that "[d]istrict courts have held that a defendant who successfully fends off a large claim may be awarded costs despite failure to prevail on a counterclaim"); *see also Lacovara,* 102 F.R.D. at 961 (holding that the defendant was entitled to costs because its counterclaim was limited to $4,494 compared to the plaintiff's complaint which sought over $80,000 although the defendant did not prevail on its counterclaim because the defendant fended off plaintiff's claim). In the case at hand, Plaintiff's original claim was for unpaid invoices in the amount of $141,048.95, while Defendant's malpractice counterclaim was for over $2.3 million.

Defendant cites *Scientific Holding* and *Lacovara* as authority for "awarding a

---

[2]"The defendant counterclaimed for compensatory damages of $3,000,000 plus punitive damages in the amount of $9,000,000 . . . but this claim was limited by [the defendant] at trial to $106,752." *Scientific Holding*, 510 F.2d. at 21.

defendant costs where the plaintiff's claims were denied and the defendant's counterclaims were not prosecuted to a judgment," (Def.'s Reply at 2-3), but ignores the enormous distinction between the monetary value of the claim and the counterclaim in those cases and the facts of the instant case. In *Scientific Holding*, the defendant's counterclaim was only approximately 8.5% of the amount of the compensatory damages prayed for by the plaintiff. *Scientific Holding*, 510 F.2d. at 27-28. In *Lacovara*, the defendant's counterclaim was only approximately 5.6% of the plaintiff's claim. *Lacovara*, 102 F.R.D. at 961. In *Scientific Holding* and *Lacovara*, the counterclaims were a pittance compared to Defendant's counterclaim in this case, which was more than sixteen times the amount of Plaintiff's original claim.

### 2. Relationship Between the Claim and Counterclaim

Second, as discussed above, the substantive relationship between Defendant's counterclaim and Plaintiff's claim is also relevant to the determination of whether costs should be awarded to the defendant in a mixed results case. Moreover, in *Tao*, the court implied that if the counterclaim was "purely defensive," then the defendant may be entitled to costs if both the plaintiff and the defendant lose on their respective claims and counterclaims. *Id.* at 576.

### 3. Analysis

Although the claim and counterclaim arose from Defendant's retention of Plaintiff as legal counsel, Defendant's counterclaim for malpractice made the case much more complicated than it otherwise would have been. Plaintiff's claim was for an account stated and all that needed to be shown as a defense to this claim, as explained in the "Order Granting Defendant/Counter-Plaintiff's Motion for Summary Judgment Regarding

Claim on Account Stated," was that the open account was never converted to a closed account because "agreement as to a 'balance' owed" was not struck between the parties.  (3/17/06 Order at 4.)  Therefore, Defendant's defense to the claim involved nothing more than proving that it had objected to the invoices within a reasonable time and that the account had never converted from an open account to an account stated.  In contrast, the malpractice counterclaim involved delving into the details of the legal services provided by Plaintiff and proving that Plaintiff was "negligent in its legal representation and violated the standard of care of an attorney specializing in trademark law."  (Def.'s Ans. at 5)

Furthermore, a counterclaim that is so much larger than a plaintiff's claim can hardly be called defensive.  Defendant did have malpractice listed as a possible defense in its answer, but its astronomical counterclaim went above and beyond what was necessary to offset any possible judgment for Plaintiff.

Defendant argues that it is not necessary for it to distinguish between the costs incurred "for [AILIC] having to defend the claims of Price Heneveld], and costs incurred for [AILIC] to prosecute its counterclaim against Price Heneveld."  (Def.'s Reply at 5.) However, the determination of the litigation costs attributable to each claim bears on whether a defendant should receive costs in a case where plaintiff and defendant both lose on their respective claims and counterclaims.  *Tao*, 412 F. Supp. at 22.  Defendant asks the court to accept its argument that "these costs should not be so distinguished [between the costs for defending against plaintiff's claim and the costs of prosecuting the counterclaim] as they were all necessitated by Price Heneveld's decision to file its frivolous lawsuit."  (Def.'s Reply at 5.)  This is akin to arguing that a defendant is entitled

7

to costs simply because he brings whatever claims he may have against the plaintiff after the initial claim has been filed.

The enormous counterclaim by Defendant obviously necessitated additional work and expenditures by both parties prior to the court's determination that AILIC's malpractice claim was "deemed time-barred except to the extent of any recovery of unpaid attorney fees to which Price Heneveld ultimately prove[d] itself to be entitled." (6/16/05 Order at 7.)  The counterclaim was included in Defendant's answer and Plaintiff was working under the impression that it could be ordered to pay over $2.3 million.  For these reasons, the fact that the counterclaim was eventually rejected by this court does not convert it into a "defensive" counterclaim.  Inasmuch as neither party prevailed under these circumstances, the court will, in its discretion, deny Defendant's motion.

### B.  Attorneys' Fees as a Sanction

Defendant also argues that Plaintiff should be ordered to pay Defendant's attorneys' fees as a sanction, under either the inherent power of the court or pursuant to Federal Rule of Civil Procedure 56(g), for allegedly basing its lawsuit, as reflected in the July 7, 2004 affidavit of James Mitchell filed in state court, on a premise it knew to be untrue.  (Def.'s Mot. at 6, Ex. 2.)  Defendant maintains that "[i]n bringing and persisting in this litigation, Price Heneveld forced [AILIC] to fund approximately 18 months of litigation that it knew all along to be meritless."  (*Id.* at 9.)  Although Defendant refers only generally to the affidavit, the court presumes that the contested statement is found in paragraph 5 of Mitchell's affidavit, which states: "Price Heneveld has continued to invoice Annuity Investors for the remaining balance of $141,048.95 on a monthly basis,

but Annuity Investors has failed to satisfy its account and *has not objected to any of the invoices comprising this balance.*" (7/7/04 Mitchell Aff. at ¶ 5) (emphasis added).

Defendant claims that this statement was blatantly false in light of the later depositions and affidavits of James Mitchell and Randall Litton. (Def.'s Mot. at 7). Specifically, Defendant claims that later testimony revealed that Plaintiff at all times knew that Defendant had objected to the bill. Although the Defendant refers to no specific portions of the 24-page deposition, the court surmises that the most relevant part of Randall Litton's deposition includes the following:

> Q: And as part of that claim isn't it true that they indicated an unwillingness to pay their bill?
> A: No, I don't think that's correct at all.
> Q: It's not correct?
> A: I don't believe so. I mean, we were talking about how much money they wanted from us. That's what we were talking about.
> Q: Implicit in that, though, wouldn't it be implicit that, if they were asking you to pay them money, that they weren't going to pay you money?
> A: I don't know the answer to that.
> Q: But it's your testimony, then, that they did not ever indicate that they did not want to pay your bill in any of these discussions or that they shouldn't have to pay your bill or anything like that?
> A: Well, that money was on the table. Obviously they owed it to us. I don't know how to answer your question. I don't want to be cute, okay, and so. . . the money was on the table. Just like, I mean, they were asking for more than the bill.

(Litton Dep. at 19-20.)

Defendant also refers to James Mitchell's deposition, but makes no specific citations to the 74-page deposition attached in full as an exhibit. The court was unable to find anything which would seem contradictory or anything referring to the billing in its independent review of the deposition, and is unwilling to construct, on its own, Defendant's argument. Defendant makes no specific references to the material

9

contained in the later affidavits either. Again, in its independent review of the record, the court has located a passage of James Mitchell's affidavit, dated November 30, 2005, which states:

> In March of 2002, Annuity Investor's John Gruber contacted me and asked that Price Heneveld 'share the pain' relating to Annuity Investor's fees incurred in the litigation with Clark Capital. Mr. Gruber then asked that the firm pay Annuity Investors a sum of money. I asked Mr. Gruber to explain the basis for the request. He claimed my December 3, 1996 opinion letter was partially responsible for the Clark Capital trademark infringement litigation. I disagreed and turned the matter over to my law partner, Randy Litton.

(11/30/05 Mitchell Aff. at ¶ 16.)

On March 17, 2006, the court entered summary judgment for Defendant and against Plaintiff for Plaintiff's claim for account stated because the court found that a reasonable jury could only determine that the statements presented in the depositions and affidavits in the record constituted objections to the invoices. However, it does not automatically follow that the affidavits filed by Plaintiff were fraudulent.

Under the general American rule, unless Congress provides otherwise, parties to a litigation are to bear their own attorneys' fees. *Fogerty v. Fantasy, Inc.,* 510 U.S. 517, 533 (1994). However, district courts have the inherent power beyond the explicit power given in the Federal Rules of Civil Procedure to award attorneys' fees as sanctions, because "[it] has long been understood that certain implied powers must necessarily result to our Courts of justice from the nature of their institution, powers which cannot be dispensed within a Court because they are necessary to the exercise of all others." *Chambers v. NASCO, Inc.*, 501 U.S.

32, 43 (1991) (citations and quotations omitted). This power can be exercised "when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Id.* at 45-46 (citations and quotations omitted). The Sixth Circuit has held that to award attorneys' fees for bad faith, the district court must "make actual findings of fact that demonstrate that the claims were meritless, that counsel knew or should have known that the claims were meritless, *and* that the claims were pursued for an improper purpose." *Big Yank Corp. v. Liberty Mut. Fire Ins. Co.*, 125 F.3d 308, 314 (6th Cir. 1997) (emphasis supplied).

Furthermore, Congress has provided that if the district court determines affidavits are presented in bad faith or solely for the purpose of delay under the summary judgment rule, then the party presenting the affidavits shall be ordered to pay the other party the amount of attorneys' fees and other expenses incurred due to the affidavits. Fed. R. Civ. P. 56(g).

For filing of the affidavit to be considered "vexatious, wanton, or oppressive," under any reasonable interpretation of those terms, it would have to involve some intentional conduct by Plaintiff. Even assuming arguendo that the claims by Plaintiff were meritless, and even assuming counsel should have known this, the claims must have been pursued for an improper purpose and that simply is not the case here. Plaintiff sought to have outstanding invoices it had issued paid. This is certainly not an improper purpose.

In its motion, Defendant cites an unpublished Sixth Circuit case, which states that "a 'mistake' would not meet the requirements for sanctions." (Def.'s Mot. at 8) (citing *Mann v. Univ. of Cincinnati*, 1997 WL 280188 at *5 (6th Cir. 1997)). In the instant case,

11

the potential conflict between the affidavits could be considered the product of a mistake, as there is no evidence that Mitchell believed that there were any objections to the invoices.  Since he may have been mistaken, there is not sufficient evidence that Plaintiff was acting "in bad faith, vexatiously, wantonly, or for oppressive reasons" for the court to exercise its inherent authority to award attorneys' fees as a sanction.  *Chambers*, 501 U.S. at 43.

Likewise, the court finds no demonstrated bad faith or improper intent to delay. Defendant has not asserted that Plaintiff filed false affidavits with an improper intent to delay and has given no evidence that the suit was brought in bad faith as defined by the Sixth Circuit.  *Big Yank Corp.,* 125 F.3d at 314.

## III.  CONCLUSION

IT IS ORDERED that Defendant's "Motion of Defendant/Counter-Plaintiff in Support of Bill of Costs and Motion for Attorneys' Fees, Expenses, and Non-Taxed Costs as Sanction" [Dkt. #114] is DENIED.

      S/Robert H. Cleland
      ROBERT H. CLELAND
      UNITED STATES DISTRICT JUDGE

Dated:  July 27, 2006

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, July 27, 2006, by electronic and/or ordinary mail.

      S/Lisa Wagner
      Case Manager and Deputy Clerk
      (313) 234-5522